## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ATKINSON, HASKINS, NELLIS, BRITTINGHAM, GLADD & FIASCO, P.C., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-762-JED-PJC |
| | ) | |
| OCEANUS INSURANCE GROUP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This case presents claims pursued by a law firm against the insurer of several of the

firm's former clients. Plaintiff Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C.

("AHN") alleges that defendant Oceanus Insurance Group ("Oceanus") is liable for breaching its

contract with AHN by failing to pay legal fees and expenses owed. AHN also asserts that

Oceanus and two of its employees, defendants Ron Kurtz and Tim Morris, are liable for fraud in

connection with representations and omissions regarding payment of AHN's fees. Four motions

are now before the Court. Kurtz and Morris each seek dismissal on the basis that the Court lacks

personal jurisdiction over them. (Docs. 15 and 21). Oceanus seeks dismissal of AHN's fraud

claim (Doc. 13) and a stay of these proceedings pending the outcome of an appeal in the

underlying case (Doc. 12).

### BACKGROUND

In October 2011, Oceanus engaged AHN to represent three defendants in a medical

malpractice action in the United States District Court for the Eastern District of Oklahoma,

*Shatwell v. Phillips, et al*., Case No. CIV-11-343-JHP (the "Underlying Litigation"). AHN

defended the three defendants through trial,[1] which resulted in a verdict against the defendants in excess of $1 million. AHN represents that Oceanus refused to pay legal fees totaling $286,802.50 and out-of-pocket litigation expenses in the sum of $44,489.23. These unpaid invoices resulted from work performed in connection with a portion of the pretrial litigation, the trial, and the post-trial phase of the Underlying Litigation.

AHN characterizes Oceanus's failure to pay the outstanding invoices as more than a simple breach of contract. In the spring of 2013, AHN requested payment of the most recent outstanding invoice, which was months past due at that time. AHN alleges that Morris, Oceanus's Claims Specialist, represented that the invoice had been approved for payment and would be paid. The trial commenced on June 4, 2013, and resulted in a verdict on June 13. Following the verdict, there were several communications to Oceanus requesting payment of the outstanding fees and costs. During the next three months, AHN alleges that Morris, acting at the direction of Kurtz, Oceanus's Vice President, continued to represent that AHN would be paid in order to induce AHN to continue representing Oceanus in post-trial matters. AHN maintains that Oceanus never intended to pay the outstanding invoices despite its representations to the contrary.

In September 2013, a conference call was arranged between AHN and Oceanus. During that call, Morris disclosed for the first time that Oceanus would not be paying the fees and costs based upon its contention that AHN's fees were unreasonable given certain issues that had come to light. Specifically, Oceanus contends that AHN made certain strategic mistakes that resulted in its insureds being unable to assert at the trial of the Underlying Litigation that a co-defendant, Dr. James Seratt, was responsible for the alleged malpractice. Oceanus further contends that

---

[1]   AHN represented Kenneth Edward Phillips, D.O., Jennifer Rau, P.A., and Tahlequah Emergency Consultants on behalf of Oceanus.

AHN failed to preserve this issue because, unbeknownst to Oceanus, two other AHN attorneys represented Dr. Seratt and AHN was therefore allegedly not acting in the best interests of Oceanus's insureds.

On October 31, 2013, AHN filed the instant lawsuit in Tulsa County District Court. Oceanus removed the case to this Court on November 22, 2013.

DISCUSSION

## I.      Morris's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 21)

Morris seeks dismissal of AHN's fraud claim against him on the basis that this Court lacks personal jurisdiction over him. Morris argues that his contacts with Oklahoma are insufficient to subject him to jurisdiction here because any activities he directed at the State were at the behest of his employer, not in a personal capacity.

AHN has the burden of establishing that the Court can assert personal jurisdiction over the defendants. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, ... the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). If the parties

3

provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor, and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. *Id.*

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the United States Constitution. *See* 12 *Okla. Stat*. § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." *Conoco, Inc. v. Agrico Chem. Co*., 115 P.3d 829, 835 (Okla. 2004) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon*, 205 F.3d at 1247 (quoting *World–Wide Volkswagen*, 444 U.S. at 291). A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the

defendant based on the defendant's business contacts with the forum state." *Id*. at 1247 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984)).

The test for specific jurisdiction is best summarized as a three-part inquiry: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

AHN asserts that Morris directed several activities into Oklahoma and that its fraud claim against him arose, at least in part, from those activities. The evidence shows that Morris participated in numerous communications with AHN throughout the Underlying Litigation, including telephone calls, emails, and letters. The unpaid invoices at issue were the subject of some of those communications. In the course of these communications, representations were allegedly made to AHN by Morris that the invoices would be paid. In addition, Morris attended a private mediation and court-ordered settlement conference in Oklahoma in the Underlying Litigation. During the mediation, Morris discussed a specific unpaid invoice with AHN's Jennifer Annis, assuring her that it would be paid. AHN further asserts as part of its fraud claim that Morris knew the invoices would never be paid. AHN's fraud claim, which is based, in part, upon Morris's representations that outstanding invoices would be paid, can therefore be directly tied to Morris's contacts with Oklahoma.[2] As such, AHN has met its burden of establishing that Morris has minimum contacts with Oklahoma sufficient to subject him to jurisdiction.

---

[2] Morris cites *Kendall v. Turn-Key Specialists, Inc*., 911 F. Supp. 2d 1185 (N.D. Okla. 2012) for the proposition that the fiduciary shield doctrine prevents a court from exercising jurisdiction over an individual where his only relevant contacts with a forum are performed for the benefit of his employer. However, as plaintiff points out, *Kendall* pre-dated the Tenth Circuit's opinion in *Newsome*, where the court noted that the fiduciary shield doctrine, which exists only as a matter

5

AHN having met its burden of demonstrating minimum contacts, the burden shifts to Morris to show that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Worldwide Volkswagen*, 444 U.S. at 292; *Newsome*, 722 F.3d at 1271. This entails five considerations:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Newsome*, 722 F.3d at 1271 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998)). This Court is mindful that cases meeting this standard are "rare." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009).

Morris asserts that being subjected to jurisdiction in Oklahoma would be unjust because (1) he lives in Florida and travel to Oklahoma would impose a burden on him because he has young children; (2) if AHN obtained a judgment against him, it would have to be domesticated in Florida; and (3) AHN has a complete remedy against Oceanus. Of the five relevant factors, Morris's arguments relate to the burden placed on him and somewhat to the plaintiff's interests in obtaining effective relief. The Tenth Circuit has specifically rejected the burden argument presented by Morris with respect to travel. In *Newsome*, the court noted that it could "see no particular burden simply in the travel from Alberta[, Canada] to Oklahoma that may be required as part of this lawsuit." 722 F.3d at 1273. And while the Court is sympathetic to Morris's concerns regarding his family life, this factor has not prevented his travel to Oklahoma in the past. In light of Morris's failure to demonstrate a substantial burden on him, or that the

---

of state law, has never been adopted in Oklahoma. 722 F.3d at 1275. Oklahoma does not appear to have adopted the doctrine subsequent to *Newsome*. Morris's reliance upon *Kendall* is thus not persuasive.

remaining factors favor him, the Court finds that traditional notions of fair play and substantial justice would not be offended should this Court exercise personal jurisdiction over him. [3]

## II.        Kurtz's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 15)

As with Morris, AHN must make a prima facie showing that Kurtz is subject to jurisdiction in Oklahoma.  As to specific jurisdiction, AHN must again establish "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1264.

AHN argues that, while Kurtz did not travel to Oklahoma, his statements and omissions during the course of the Underlying Litigation are sufficient to warrant this Court's exercising of specific jurisdiction over him.  In essence, AHN maintains that the communications Kurtz directed to Oklahoma give rise to its fraud claim against him.  Kurtz notes that he has never been to Oklahoma and has no personal contracts or real property here.  He did, however, have communications with AHN via conference calls and emails.  AHN asserts that Kurtz participated in communications at a time when it is alleged that he knew Oceanus would not be paying AHN's invoices, but fraudulently failed to disclose that intent.  For purposes of determining personal jurisdiction, AHN's allegations are sufficient to make a prima facie showing that Kurtz is subject to jurisdiction in Oklahoma.

---

[3]    Both Morris and Kurtz, who were served post-removal, argue that they were not properly served because AHN did not have summonses reissued once the case was removed to this Court. The Court finds this argument lacking in merit and will continue to adhere to the majority rule that state court process can be served post-removal without running afoul of any procedural or substantive law.  *See, e.g., Spiritbank v. McCarty*, 08-CV-675-CVE-PJC, 2009 WL 1158747 (N.D. Okla. Apr. 22, 2009) (discussing majority view and contrary Ninth Circuit precedent).  To the extent Morris's and Kurtz's motions are premised upon allegedly improper service, they are denied.

With respect to traditional notions of fair play and substantial justice, the analysis is identical to that of Morris. Indeed, Kurtz's arguments are identical to Morris's. More need not be said, other than to note that Kurtz did not meet his burden of showing that defending this case in Oklahoma would violate Due Process.

**III.        Oceanus's Motion to Dismiss Plaintiff's Fraud Claim (Doc. 13)**

Oceanus seeks dismissal of AHN's fraud claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Oceanus argues that the fraud claim asserted here is nothing more than a well-dressed breach of contract claim masquerading as something more—a claim Oklahoma precedent strongly rejects. AHN responds that its fraud claim is based on conduct distinct from that which forms the basis of its contract claim as it is based on misrepresentations and omissions occurring after Oceanus had already breached the contract.

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556.

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C*., 493 F.3d 1210, 1215 (10th Cir. 2007).

As AHN argues, it is certainly possible to pursue claims for fraud and breach of contract simultaneously under Oklahoma law. In *Specialty Beverages, L.L.C. v. Pabst Brewing Co*., 537 F.3d 1165 (10th Cir. 2008), the court noted that, "[w]hile a party may not obtain double recovery, election of remedies is not required." *Id*. at 1180. Notwithstanding that general principle, it is well-settled that Oklahoma law does not permit the simultaneous pursuit of fraud and breach of contract claims where the two claims are not sufficiently distinct. *McGregor v. Nat'l Steak Processors, Inc*., 11-CV-0570-CVE-TLW, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012); *Edwards v. Farmers Ins. Co.,* 08–CV–730–TCK–PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009) ("a claim for fraud must be distinct from a claim for breach of contract"). *But see F.D.I.C. v. Hamilton*, 122 F.3d 854, 863 (10th Cir. 1997) (noting that a simultaneous fraud claim is available where the formation of the contract is premised upon an intentionally deceptive promise to act; *i.e*., fraud in the inducement of a contract). In *McGregor*, this Court dismissed a fraud claim premised upon the allegation that the defendants concealed the fact that they had no intention of paying plaintiff. 2009 WL 4506218, at *5. The Court noted that Plaintiff cannot convert an ordinary breach of contract claim into a tort merely by alleging that

9

defendants concealed their intention to breach the contract." The Tenth Circuit, applying Oklahoma law, has likewise rejected such attempts. *See Myklatun v. Flotek Indus., Inc*., 734 F.3d 1230, 1235-36 (10th Cir. 2013) ("the proper remedy for a breach of contract will be found in a breach of contract claim, not in a claim of fraud based on the breaching party's failure to disclose its potential future breach").

In light of these authorities, AHN's fraud claim is subject to dismissal. AHN's fraud claim is based upon Oceanus's affirmative representations that unpaid invoices would be paid and its alleged failure to disclose that it had no intention of paying for the purpose of inducing AHN to continue performing work in the Underlying Litigation. The flaw in AHN's theory is that Oceanus had a preexisting duty to pay the unpaid invoices, and as such, a new contract was not created by Oceanus's actions which could be said to have been fraudulently induced and would therefore be the basis of a fraud claim. *In re Manchester Gas Storage, Inc*., 309 B.R. 354, 371 (Bankr. N.D. Okla. 2004) (citing *Home Owners' Loan Corp. v. Thornburgh*, 106 P.2d 511, 512 (Okla. 1940)) ("promising the future performance of something one is already obligated to do cannot support a reciprocal new promise either (the "pre-existing duty" rule)"). Nor do the omissions of Oceanus's true intentions to not pay the invoices amount to fraud under Oklahoma law. Moreover, the actual damages that AHN seeks under its breach of contract and fraud claims are identical because they are based upon the work performed in the Underlying Litigation. The two claims are likewise based upon the same set of operative facts. As such, AHN's fraud claim is indistinct from its contract claim, despite its arguments to the contrary. AHN's fraud claim therefore fails.

Oceanus alone sought dismissal of AHN's fraud claim. As discussed above, defendants Kurtz and Morris appeared only to assert that the Court lacked personal jurisdiction over them—

an argument which has been rejected. The analysis as to the fraud claim against Oceanus fully encompasses the factual allegations against Kurtz and Morris. Indeed, it is solely Kurtz's and Morris's actions which form the basis of AHN's assertions of fraud against Oceanus. Because it would be a significant waste of resources and the Court's time to require Kurtz and Morris to appear and then seek dismissal of AHN's fraud claim, the Court's dismissal of AHN's fraud claim is as to all three defendants. *See McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) (affirming *sua sponte* dismissal under Rule 12(b)(6) where it is "patently obvious" that plaintiff could not prevail on the facts alleged). The fraud claim is the sole basis for liability alleged by AHN against defendants Kurtz and Morris. As such, defendants Kurtz and Morris are dismissed from this case with prejudice.

All that remains is AHN's breach of contract claim against Oceanus.

## IV. Oceanus's Motion to Stay (Doc. 12)

Oceanus requests that the Court stay this litigation pending the outcome of its insureds' appeal in the Underlying Litigation. Oceanus argues that a stay is warranted because forcing it to proceed here would be premature and could result in harm to its insureds. AHN opposes a stay, arguing that Oceanus has failed to meet its burden in demonstrating that the relevant considerations, discussed below, merit a stay.

Stays are the exception. *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)) ("[t]he right to proceed in court should not be denied except under the most extreme circumstances"). This is especially true where, as here, the parties are not the same in the related litigation as the parties in the case in which the stay is sought. *Span-Eng Assoc. v. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985). In determining whether to stay, most

courts consider the following four-factor test: "(1) whether the [movant] is likely to prevail in the related proceedings; (2) whether, absent a stay, the [movant] will suffer irreparable harm; (3) whether the issuance of the stay will cause substantial harm to the other parties to the proceeding; and (4) the public interest at stake." *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). This Court has the inherent authority to control its docket, which includes the power to stay cases in the interests of judicial economy. *Id.*

Oceanus argues that, absent a stay, it will be forced to litigate here without the benefit of being able to assert a counterclaim for legal malpractice against AHN. The Underlying Litigation is currently on appeal and therefore Oceanus's purported malpractice claim is not yet ripe. Oceanus further argues that it will be forced to make arguments in this case regarding the reasonableness (or alleged lack thereof) of AHN's representation as it relates to the value of AHN's services and that these arguments could undermine the insureds' success in the Underlying Litigation. Oceanus also suggests it would have to waive attorney-client privilege to proceed in this case.

At this point, a putative legal malpractice claim against AHN is speculative. The Underlying Litigation is on appeal and Oceanus does not yet know whether its insureds will prevail in that appeal. Even assuming they did not, and a malpractice claim ripens, it is far from clear that Oceanus could assert legal malpractice as a counterclaim against AHN in this litigation. There is a great deal of case law from other jurisdictions regarding whether an insurance company can pursue an equitable subrogation claim (or direct claim) against its insureds' attorneys for whom it footed the bill. Many courts have held in the negative. Neither

party identifies Oklahoma's position on this issue.[4]  Accordingly, to the extent Oceanus premises its stay request on its ability to assert such a claim, that position is without merit.

Oceanus's concerns regarding privilege are likewise speculative.  It is unclear at this point the extent to which Oceanus and AHN would have to reveal privileged communications in order to litigate this case.  In any event, the Court declines to determine, as AHN suggests, that such a waiver has already occurred.  Oceanus's concerns in this respect do not support a finding that it will suffer irreparable harm absent a stay.  Nor do its concerns regarding potential revelations of strategy to its insureds' opponents in the Underlying Litigation.  Either party is free to request that submissions be sealed in the interest of not harming the parties in the Underlying Litigation.

As the Court has noted, denying a party the right to proceed in litigation is an extreme remedy.  It is in the public interest that disputes be resolved with reasonable expedience.  In light these considerations, a stay of this case is not warranted.  Oceanus's request for a stay is therefore denied.

CONCLUSION

**IT IS THEREFORE ORDERED** that:

Morris's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 21) is **denied**;

Kurtz's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 15) is **denied**;

Oceanus's Motion to Dismiss Plaintiff's Fraud Claim (Doc. 13) is **granted** and consequently AHN's fraud claim is dismissed as to all three defendants; and

Oceanus's Motion to Stay (Doc. 12) is **denied**.

Defendants Morris and Kurtz are terminated as defendants.

---

[4]  It appears to not have one, as the Court could not find an Oklahoma case discussing this issue.

**IT IS FURTHER ORDERED** that Oceanus shall file its answer and the parties shall submit a joint status report—both within **21 days** of the date of this Opinion and Order.

**SO ORDERED** this 7th day of August, 2014.

_____

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE