IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ATKINSON, HASKINS, NELLIS,          )
BRITTINGHAM, GLADD & FIASCO,        )
P.C.                                )
                                    )
            Plaintiff,              )
                                    )       Case No. 13-CV-762-JED-PJC
v.                                  )
                                    )
OCEANUS INSURANCE COMPANY,          )
A Risk Retention Group,             )
                                    )
            Defendant.              )

## OPINION AND ORDER

The Court has for its consideration Plaintiff Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. ("AHN") Motion to Dismiss Counterclaim and Supporting Brief (Doc. 46), which defendant Oceanus Insurance Group ("Oceanus") has opposed (Doc. 50).

### I.    Background

Oceanus, an insurance company, retained AHN on October 18, 2011 to represent three of its insured in a medical malpractice action filed in the Eastern District of Oklahoma, *Shatwell v. Phillips, et al.*, Case No. CIV-11-343-JHP (the "Underlying Litigation"). The trial resulted in a verdict of over $1 million against two of Oceanus's insured. The Tenth Circuit affirmed the case on appeal. *See Monfore v. Phillips*, 778 F.3d 849 (10th Cir. 2015). AHN brought this lawsuit against Oceanus, alleging that Oceanus breached its contract with AHN by failing to pay legal fees and expenses associated with the Underlying Litigation in the sum of $44,489.23.

Oceanus then filed a counterclaim against AHN, alleging the following four counts: (1) breach of contract, (2) legal malpractice, (3) equitable subrogation, and (4) unjust enrichment, disgorgement, and restitution. (Doc. 41). The counterclaim alleges that AHN failed to inform Oceanus of a conflict of interest when, during the Underlying Litigation, AHN also represented a

co-defendant who was not insured by Oceanus.  (Doc. 41, ¶ 19(a)-(b).  Oceanus asserts that AHN's undisclosed conflict of interest impacted its trial strategy to the detriment of the insured, particularly by failing to investigate, prepare, and pursue cross-claims against other defendants. (*Id.*, ¶ 19(d)).  Oceanus further argues that AHN's conduct resulted in an unfavorable jury verdict for the insured and Oceanus's resulting liability for a judgment in excess of $1 million.  (*Id.*, ¶ 19(k)).

## II.      Legal Standard

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted).  The *Twombly* pleading standard is applicable to all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III.   Discussion

AHN seeks to dismiss Oceanus's counterclaims for breach of contract, legal malpractice, equitable or common law subrogation, unjust enrichment, disgorgement, and restitution.  (Doc. 46).  As this is a diversity case, Oklahoma law controls.

At the outset, the Court declines to address AHN's argument that Oceanus's counterclaim was prematurely filed.  This argument was premised upon the fact that at the time the Motion was filed, the Underlying Litigation had not been fully resolved on appeal.  As noted above, this is no longer the case.

### A.  Breach of Contract

AHN argues that dismissal of Oceanus's breach of contract claim is appropriate because Oceanus is solely alleging a tortious breach of contract claim and cannot satisfy the special relationship requirement to maintain such a claim.  (Doc. 46 at 5).  In response, Oceanus disputes AHN's characterization of its claim, stating that the claim as alleged supports non-tortious breach of contract in addition to a tortious breach of contract, both of which are permitted under Oklahoma law.  (Doc. 50 at 4-5).  The Court first determines the type of contract claim Oceanus has asserted, and then whether Oceanus may properly state such a claim.

While Oceanus's statement that a party may bring a claim against a professional based in both tort and contract has merit, it is an incomplete statement of the law.  *See Great Plains Fed. Sav. & Loan Ass'n v. Dabney*, 846 P.2d 1088, 1092 (Okla. 1993).  The Oklahoma Supreme Court has made clear that "if the alleged contract 'merely incorporates by reference or by implication a general standard of skill or care [to] which a defendant would be bound independent of the contract[,] a tort case is presented . . . .'"  *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1295 (N.D. Okla. 1998) (quoting *Great Plains Fed. Sav. and Loan Ass'n v. Dabney*, 846

P.2d 1088, 1092 (Okla. 1993)).  In *Dabney*, a legal malpractice suit brought by a savings and loan association against an attorney and a law firm, the Oklahoma Supreme Court held that the contract was not based in tort because there was "an express agreement by the defendant to do more than use ordinary care in the treatment or representation of plaintiff." *Dabney*, 846 P.2d at 1097 (Okla. 1993)).

The Tenth Circuit and federal district courts in Oklahoma have applied *Dabney* to hold that contracts that merely restate the professional's normal duty of care are sound in tort. *See Trinity Mortgage Companies, Inc. v. Dryer*, 451 F. App'x 776, 780 (10th Cir. 2011) (unpublished) (breach of contract claim sounded in tort because the plaintiff merely alleged breach of an obligation to provide a general standard of care); *Grant*, 8 F. Supp. 2d at 1296 (contract sounded in tort because the plaintiff's breach of contract claim alleged nothing more than the use of ordinary care); *F.D.I.C. v. Regier Carr & Monroe*, 996 F.2d 222, 224 (10th Cir. 1993) (engagement letter "simply incorporated by reference generally accepted auditing standards and proposed nothing beyond the general standard of care for certified public accountants").

Moreover, an attorney's alleged violation of the Oklahoma Rules of Professional Conduct "should not give rise to a cause of action nor should it create [a] presumption that a legal duty has been breached."  Okla. Stat. tit. 5, ch. 1, app. 3-A.  Accordingly, the Tenth Circuit has found that claims "based on alleged violations of the Oklahoma Rules of Professional Conduct [are] barred as a matter of law." *Trinity Mortgage Companies, Inc. v. Dryer*, 451 F. App'x 776, 779 (10th Cir. 2011) (unpublished) (affirming district court's determination that summary judgment was proper on breach of contract claim).

Here, Oceanus's breach of contract counterclaim is premised upon the following allegations in its counterclaim: that AHN breached its "implied duty of good faith and fair dealing," its "implied duty to act reasonably and diligently," its "implied duty to perform the services with reasonable skill and competence, and to perform the services in an ethical manner consistent with public policy." (Doc. 41, ¶¶ 26-30). It is thus clear that the contract is sound in tort because it alleges nothing more than a breach of AHN's general duty of care. *See Dabney*, 846 P.2d at 1092.[1]

Nonetheless, the Court finds that AHN's claim for breach of contract must be dismissed because its allegations cannot form the basis of a tortious breach of contract claim. First, as to the duty of good faith and fair dealing, under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing." *Wathor v. Mutual Assurance Adm'rs, Inc.,* 87 P.3d 559, 561 (Okla.2004). Absent circumstances giving rise to a special relationship, however, the Oklahoma Supreme Court has held that "[i]n ordinary commercial contracts, a breach of [the duty of good faith and fair dealing] merely results in damage for breach of contract, not independent tort liability." *Id.* Oklahoma courts have found such a "special relationship" in only very limited circumstances, most notably between an insurer and insured. *Id.*; *see also Allison v.*

_____

[1] Oceanus attempts to distinguish *Dabney* on the grounds that the issue before the Court there was whether the two-year tort statute of limitations period applied, which is not the case here. (Doc. 50 at 7). This argument is not persuasive, as the language in *Dabney* was broadly worded and is also rebutted by subsequent cases applying the standard to cases that did not involve statute of limitations issues. *See Trinity Mortgage Companies, Inc. v. Dryer*, 451 F. App'x 776, 780 (10th Cir. 2011) (unpublished). Oceanus also cites the following from *Dabney*: "We did not decide [that] a proceeding against a lawyer or law firm is limited *only* to a proceeding based in tort no matter what the allegations of a petition brought against the lawyer or law firm. We have never so held and, in fact, to so rule would be tantamount to treating lawyers differently than we have treated other professions, something we refuse to do." *Dabney*, 846 P.2d at 1092 (emphasis in original). The Court's ruling is not inconsistent with *Dabney*.

*UNUM Life Ins. Co.,* 381 F.3d 1015, 1027 (10th Cir. 2004) ("[T]here is no dispute that the Oklahoma [bad faith] law is directed toward the insurance industry"); *Hitch Enters., Inc. v. Cimarex Energy Co.,* 859 F.Supp.2d 1248, 1263 (W.D. Okla. 2012) ("The Oklahoma Supreme Court has expressed its reluctance to extend tort recovery for bad faith beyond the insurance field . . . ."). Having carefully reviewed Oceanus's counterclaim, presuming all of Oceanus's factual allegations to be true and construing them in the light most favorable to Oceanus, the Court finds that Oceanus cannot show that a special relationship exists, or that the factual situation warrants a claim for the tortious breach of the duty of good faith and fair dealing.

Second, the Court likewise determines that Oceanus's remaining allegations—that AHN breached its implied duty to act reasonably and diligently, and its implied duty to perform services with reasonable skill and competence, and to perform the services ethically and consistent with public policy—fail to state a claim. (*See* Doc. 41, ¶¶ 28-30). Specifically, Oceanus's breach of contract claim is premised upon its allegation that AHN proceeded in its representation of Oceanus's insured in the underlying litigation despite resolving an alleged conflict of interest. Indeed, Oceanus's claim uses the term "ethics," and asserts violations of duties that are derived from the Oklahoma Rules of Professional Conduct—the duty of competence is governed by Rule 1.1, and the duty of diligence is governed by Rule 1.3. As the Oklahoma Rules of Professional Conduct themselves make clear, these allegations may not form the basis of a claim of breach of contract against AHN. *Trinity Mortgage Companies, Inc.*, 451 F. App'x at 779. Thus, Oceanus's counterclaim for breach of contract must be dismissed.

### B. Legal Malpractice

AHN argues that Oceanus is unable to state a claim for legal malpractice because Oceanus had no attorney-client relationship with AHN, because AHN was retained to represent

three Oceanus insureds.  (Doc. 46 at 6).  In response, Oceanus contends that the Court should find that an insurer has standing to assert a legal malpractice claim against counsel hired to defend an insured.  In support of this claim, Oceanus urges the Court to adopt law from jurisdictions it asserts "have the better position on this issue," and argues that Oceanus was "intended" to be the client or beneficiary of the contract between Oceanus and AHN because a favorable judgment would eliminate or reduce its obligation to indemnify the insured.  (Doc. 50 at 9).  Oceanus further argues that an insured, by contrast, has no incentive to pursue a legal malpractice claim because an insured is not required to satisfy a judgment.  (*Id.*).

In Oklahoma, legal malpractice claims are based in tort.  *Stephens v. Gen. Motors Corp.*, 905 P.2d 797, 798 (Okla. 1995).  In order to state a claim for legal malpractice, Oceanus must show: (1) existence of an attorney-client relationship; (2) breach of a lawyer's duty to the client; (3) facts constituting the alleged negligence; (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage); and (5) but for the lawyer's conduct, the client would have succeeded in the action.  *Worsham v. Nix*, 145 P.3d 1055, 1065 (Okla. 2006).  Thus, the existence of an attorney-client relationship is central to the success of Oceanus's claim.  *See Haney v. State*, 850 P.2d 1087, 1089 (Okla. 1993) ("One of the requisite elements of a legal malpractice claim is the existence of an attorney-client relationship.").  However, the parties concede that the Oklahoma Supreme Court has yet to decide whether the attorney-client relationship extends to an insurance carrier who retains a law firm to represent its insured.

In the absence of binding precedent, the Court looks to Oklahoma decisions construing the attorney-client relationship.  It appears that Oklahoma courts have only extended the attorney-client relationship beyond its traditional scope to intended beneficiaries of a will.  For example, in *Leak-Gilbert v. Fahle*, 55 P.3d 1054 (Okla. 2002), the Oklahoma Supreme Court

held that the intended beneficiary of a will that failed to identify all of the decedent's heirs as a result of alleged malpractice could bring a legal malpractice action against the attorney. Oklahoma courts have interpreted *Fahle* as "limited to a narrow factual situation where an intended beneficiary of the testator was harmed by a lawyer's malpractice." *Swearingen v. Bank of Oklahoma*, 134 P.3d 922, 925 (Okla. Civ. App. 2006) (declining to apply *Fahle* because plaintiff was unable to show she was either identified as a beneficiary or was an intended beneficiary). As a result of this narrow interpretation, courts have declined to find the attorney-client relationship applies to other factual scenarios. *Compare Fleischman v. Horton*, 2006 WL 3541780, at *4 (W.D. Okla. Dec. 4, 2006) (allowing plaintiffs' claim for legal malpractice against attorney because they were intended beneficiaries of will) *with Whitehead v. Rainey, Ross, Rice & Binns*, 997 P.2d 177, 180 (Okla. Civ. App. 2002) (refusing to apply law from other jurisdictions to establish attorney-client relationship between employer's retained counsel and employee-beneficiaries of employer's retirement plan who were advised by counsel).

Oceanus has alleged insufficient facts in its counterclaim to show that it was identified as AHN's client in the retainer agreement or that it was the intended beneficiary of the agreement. The counterclaim alleges that AHN's "duties ran in favor of Oceanus," and that AHN was obligated to "protect and promote the legitimate interests of Oceanus." (Doc. 41, ¶¶ 14(m), 35). Even construing the facts in a light most favorable to Oceanus, this is insufficient to show, as Oceanus contends, that it was "intended as a client or beneficiary of the contract" like the plaintiffs in *Fahle*. (Doc. 50 at 11). The Court is unpersuaded by Oceanus's broad reading of Oklahoma law, its reliance on district court cases from outside this jurisdiction,[2] and its argument

---

[2] For example, Oceanus cites to *General Security Ins. Co. v. Jordan, Coyne & Savits LLP*, 357 F. Supp. 2d 951 (E.D. Va. 2005) and *Hartford Ins. Co. of Midwest v. Koeppel*, 629 F. Supp. 2d 1293 (M.D.Fla. 2009).

that "it must be supposed that Oklahoma would agree with the majority of jurisdictions and recognize the insurer's legal malpractice claim against the lawyer or law firm it retains to represent an insured," (Doc. 50 at 10-11), particularly in light of Oklahoma courts' hesitance to expand the attorney-client relationship.   Accordingly, the Court also declines to find that an attorney-client relationship existed between Oceanus and AHN.   Oceanus's legal malpractice claim must therefore be dismissed.

### C.  Equitable Subrogation

Next, AHN argues that Oceanus fails to state a claim for subrogation because equitable subrogation actions based on legal malpractice are prohibited.  (Doc. 46 at 11-14).  In response, Oceanus relies on authority from other jurisdictions that have held subrogation in this context is allowed.  (Doc. 50 at 21).

"Equitable subrogation is an equitable principle by which, based on the facts and circumstances in a particular case, the responsibility for an obligation's discharge should ultimately be placed upon the person or entity who, in good conscience, ought to pay."  *In re Estate of MacFarline*,  14 P.3d 551, 561 (Okla. 2000).   "Equitable subrogation is a creature of equity, and is a fluid concept dependent upon the particular facts and circumstances of a case. It is based on natural justice's placement of the burden of bearing a loss where it ought to be, and is without the form of a rigid rule of law."  *Rice-Bell P'ship v. Capitol Indem. Corp.*, 8 P.3d 189, 192 (Okla. Civ. App. 2000).

The Court notes that this is an issue of first impression, as there is no Oklahoma law addressing whether an insurer may assert an equitable subrogation claim against an attorney for the insured on professional malpractice grounds.  In support of its Motion to Dismiss, AHN relies on a Colorado Court of Appeals case, *State Farm Fire and Casualty Company v. Weiss*,

194 P.3d 1063 (Colo. App. 2008), which held as a matter of first impression that equitable subrogation actions based upon legal malpractice are prohibited.  The court was persuaded by a Colorado district court case, *Essex Insurance Co. v. Tyler*, 309 F. Supp. 2d 1270 (D. Colo. 2004), which concluded that the Colorado Supreme Court would likely not permit an equitable subrogation claim premised on attorney's professional negligence based on policy considerations underlying Colorado case law prohibiting the assignment of legal malpractice claims.  The court then determined that based upon the "the analysis, conclusions, and public policy choice adopted by the court in *Essex*," the lower court properly dismissed the equitable subrogation claim.  *Id.* at 1067.  Here, however, neither party has provided the Court with relevant Oklahoma law that, as in *Weiss*, would guide the Court's assessment of the subrogation claim.

Nonetheless, the Court is particularly persuaded by *Atlanta International Insurance Company v. Bell*, 475 N.W.2d 294 (1991), a case cited by Oceanus throughout its Response.  In *Bell*, the Michigan Supreme Court held that an insurer could not bring a direct malpractice action against an attorney selected to represent its insured, but could recover damages suffered as a result of an attorney's malpractice under a theory of equitable subrogation.  In making this determination, the court acknowledged that:

> A rule of law expanding the parameters of the attorney-client relationship in the defense counsel-insurer context might well detract from the attorney's duty of loyalty to the client in a potentially conflict-ridden setting. Yet to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer. The only winner produced by an analysis precluding liability would be the malpracticing attorney. Equity cries out for application under such circumstances.

*Id.* at 298. The court ultimately concluded that the remedy of equitable subrogation provided a "less sweeping, less rigid solution than creation of an attorney-client relationship between the insurer and defense counsel, but a flexible, more equitable solution than absolution from liability for professional malpractice." *Id.* at 299.

The Court finds the reasoning in *Bell* to be consistent with Oklahoma principles underlying equitable subrogation—that it is a fact-dependent, fluid concept "without the form of a rigid rule of law."   *Rice-Bell P'ship*, 8 P.3d at 192.   And unlike *Weiss*, there is no indication that the Oklahoma Supreme Court would determine otherwise.   Moreover, as the Court has determined that Oceanus's legal malpractice claim cannot stand, allowing equitable subrogation based on the facts present would address Oceanus's concerns that AHN would not be held accountable for the alleged malpractice.

In light of *Bell* and the policy arguments therein, the Court does not agree with AHN's assertion that subrogation would be inequitable, nor its argument that Oceanus has not brought a proper subrogation claim.   Finally, AHN argues that Oceanus is impermissibly attempting to subrogate against its own insured, but provides no argument or analysis of how its cited case law applies. (Doc. 46 at 13).   The Court is therefore unable to address AHN's final contention.   For the reasons discussed, AHN's request to dismiss Oceanus's claim of equitable subrogation is denied.

### D.  Unjust Enrichment, Disgorgement, Restitution

AHN's argument in favor of dismissing Oceanus's claim of unjust enrichment, disgorgement, and restitution is simply that these remedies are "unavailable where there is an adequate legal remedy."  (Doc. 46 at 14).  It is well established that Oklahoma law prevents courts from invoking equitable jurisdiction "where a plaintiff has an adequate remedy at law."

*Hydro Turf, Inc. v. Int 'l Fid. Ins. Co.*, 91 P.3d 667, 673 (Okla. Civ. App. 2004); *see also Robinson v. Southerland*, 123 P.3d 35, 45 (Okla. Civ. App. 2005) (unjust enrichment claim properly dismissed where plaintiff had an adequate legal remedy for breach of contract). Moreover, "Oklahoma procedure clearly permits pleading alternative remedies, just as it allows alternative theories of recovery, as long as plaintiffs are not given double recovery for the same injury." *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996).

Here, as permitted under Oklahoma law, Oceanus pled its equitable claims in the alternative. Because the Court dismissed Oceanus's breach of contract and legal malpractice claims, however, Oceanus has no adequate remedy at law. Thus, AHN's argument fails.

## IV.     Conclusion

For the reasons set forth above, AHN's Motion to Dismiss Counterclaim and Supporting Brief (Doc. 46) is **granted in part** and **denied in part**.

SO ORDERED this 30th day of September, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE